UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: COMPLAINT AND PETITION OF WILLIAMS SPORTS RENTALS, INC., AS OWNER OF A CERTAIN 2004 YAMAHA WAVERUNNER FX 140 FOR EXONERATION FROM OR LIMITATION OF LIABILITY | No. 2:17-cv-00653-JAM-EFB<br><br>**ORDER GRANTING WILLIS' MOTION TO LIFT THE ANTI-SUIT INJUNCTION AND STAY FURTHER PROCEEDINGS IN ADMIRALTY** |
| MARIAN LATASHA WILLIS, on behalf of the Estate of RAESHON WILLIAMS,<br><br>  Respondent/Counter Claimant<br><br>v.<br><br>WILLIAMS SPORTS RENTALS, INC.<br><br>  Petitioner/Counter Defendant | |
| WILLIAMS SPORTS RENTALS, INC.<br><br>  Petitioner, Counter Defendant, and Third-party Plaintiff,<br><br>v.<br><br>THOMAS SMITH, KAI PETRICH, BERKELY EXECUTIVES, INC., ZIP, INC., and DOES 1-10<br><br>  Third-party Defendants. | |

   Following a jet ski accident that claimed the life of
Raeshon Willis, Williams Sports Rentals, Inc. ("WSR") filed an

1

admiralty action under the Limitation of Liability Act ("Limitation Act"), 46 U.S.C. § 30501 et seq., and Rule F of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims. ECF No. 1.  As required, the Court enjoined all other proceedings "arising out of, consequent upon, or in connection with" the accident.  Order Approving Stipulation of Value, ECF No. 11; see also 46 U.S.C. § 30511(c).

Willis then requested the Court dissolve its injunction so she could join WSR in a suit pending in Alameda County Superior Court—a request this Court twice denied.  ECF Nos. 56, 77. Ultimately, the Court dismissed Willis' counterclaims against WSR.  Dec. 15, 2017 Order, ECF No. 61.  Finding nothing left to adjudicate, the Court granted WSR's motion for exoneration.  ECF Nos. 76, 77; see also Tr. of 7/30/19 Proceedings, ECF No. 83. See Nov. 26, 2020 USCA Memo. At 3, ECF No. 88; see also Dec. 18, 2020 USCA Mandate, ECF No. 89.

WSR's victory was short-lived.  Granting Willis' writ of mandamus, the Ninth Circuit revived Willis' negligent entrustment claim and remanded the case with instructions.  Nov. 26, 2020 USCA Memo. at 3-4.  The Court of Appeals directed this Court to dissolve the anti-suit injunction and advised that the Court "may wish to reconsider whether to stay the proceedings until Willis' liability claim against WSR is adjudicated in state court."  Id. at 3 (citing Newton v. Shipman, 718 F.2d 959, 961 (9th Cir. 1983)).  On remand, Willis filed a motion to lift the anti-suit injunction and stay further proceedings, likewise urging the Court to stay this action pending resolution of the state court

proceedings.[1] ECF No. 90. WSR opposed Willis' motion. ECF No. 101. Willis then filed a reply. ECF No. 107.

For the reasons discussed below, the Court grants Willis' motion.

## I.   BACKGROUND

The parties are familiar with the facts of this case. The Court need not recite them here, except as is useful in reaching the disposition.

## II.   OPINION

### A.   Judicial Notice

WSR requests judicial notice of: (1) Willis' admission that her claims against WSR do not arise under California law, and (2) Sentinel Insurance Company's motion to intervene in this proceeding. Request for Judicial Notice by WSR, ECF No. 108. Federal Rule of Evidence 201 permits a court to "judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b). To this end, a court may take judicial notice of "court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

Willis' admission and Sentinel's motion to intervene, ECF No. 104, are both proper subjects of judicial notice. The Court

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for June 16, 2020.

therefore GRANTS WSR's request.

   B.   Subject-matter Jurisdiction

WSR's opposition brief raises questions about whether admiralty jurisdiction exists in this case. Opp'n at 8. To clarify: it does.

A party invoking admiralty tort jurisdiction must prove that: (1) the alleged tort occurred upon navigable waters; (2) the alleged tort had the potential to disrupt maritime commerce; and (3) the general character of the activity giving rise to the tort had a substantial relationship to traditional maritime activity. Grubart v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534, 538-40 (1995). As Willis argues, "the situs of a tort for the purpose of determining admiralty jurisdiction is the place where the injury occurs." Reply at 3 (quoting Taghadomi v. U.S., 401 F.3d 1080, 1084 (9th Cir. 2004)). Although WSR rented its jet skis on the shore, Willis' death occurred on the waters of Lake Tahoe. Sec. Am. Compl. ("SAC"), ECF No. 46. The alleged tort therefore occurred upon navigable waters. Davis v. U.S., 185 F.2d 938, 943 (9th Cir. 1950) ("[T]he waters of Lake Tahoe are navigable waters of the United States.")

Moreover, the alleged tort had the potential to disrupt maritime commerce. This inquiry focuses not "on what happened in this particular case but on whether the general features of the incident have a *potentially* disruptive effect." In re Mission Bay, 70 F.3d at 1129 (emphasis in original) (citing Jerome B. Grubart, Inc., 513 U.S. 527, 533 (1995); Sisson v. Ruby, 497 U.S. 358, 363 (1990); Foremost Ins. Co. v. Richardson, 457 U.S. 668, 675 (1982)). Similar to this case, In re Mission

4

1  Bay involved two women who suffered serious injuries after
2  falling off the back of a jet-propelled personal watercraft.
3  570 F.3d at 1125.  In assessing the tort's potential disruption
4  on maritime commerce, the Ninth Circuit found the incident was
5  "best described as harm by a vessel in navigable waters to a
6  passenger."  Id. at 1129.  The Ninth Circuit held "an incident
7  of this class could have a potentially disruptive impact" on
8  maritime commerce.  Id.  "Among other things, a vessel from
9  which a passenger goes over board . . . would likely stop to
10 search and rescue, call for assistance from others . . . and
11 ensnarl maritime traffic in the lanes affected."  Id.  Given the
12 similarity of Willis's accident to the one in In re Mission Bay,
13 the Court finds this case satisfies the "potential to disrupt
14 maritime commerce" requirement.
15     Finally, the Court finds the general character of the
16 activity giving rise to the tort bears a substantial
17 relationship to traditional maritime activity.  As WSR
18 implicitly acknowledges, this factor requires the Court to first
19 identify "the activity giving rise to the tort."  See Opp'n at 8
20 n.1; Reply at 3-4.  WSR contends that, as a negligent
21 entrustment action, the activity giving rise to this tort was
22 WSR's "shoreside rental of watersports equipment."  Opp'n at 8
23 n.1.  Citing In re Complaint & Petition of Blue Water Boating
24 Inc. ("In re Blue Water Boating"), 786 Fed. Appx 703 (9th Cir.
25 Dec. 4, 2019), WSR argues shoreside rentals lack the requisite
26 "maritime flavor" to trigger a court's admiralty jurisdiction.
27 Id.  This argument oversimplifies the Ninth Circuit's recent
28 unpublished decision.

5

In re Blue Water Boating involved a Santa Barbara company's rental of a standup paddle board. The company filed a limitation action after a renter fell off a paddle board and drowned. 786 Fed. Appx. at 703-04. The district court dismissed the suit for lack of jurisdiction. See Complaint of Blue Water Boating, Inc. v. Mubanda, No. CV 18-1231-JFW (ASx), 2018 WL 6075356, at *4 (C.D. Cal. Mar. 27, 2018). The Ninth Circuit affirmed the district court, finding that standup-paddle-board rentals lacked a "close[] relat[ion] to activity traditionally subject to admiralty law." Id. at 705 (quoting Gruver v. Lesman Fisheries, Inc., 489 F.3d 978, 983 (9th Cir. 2007)) (modifications in original).

The district court decision provides an even more detailed discussion of the issue. See Complaint of Blue Water Boating, Inc., 2018 WL 6075356, at *4. This discussion focused, not on the relationship between rental companies and traditional maritime activity, but on the relationship between standup paddle boards and traditional maritime activity. See id. Comparing paddle board use to activities like swimming and surfing, the court found that "the relationship between the innocent operation of [stand-up paddle boards] and traditional maritime activity [was] virtually non-existent." Id.; see also Exec. Jet Aviation, Inc. v. City of Cleveland, Ohio, 409 U.S. 249, (1972) (swimming-based torts lack a substantial relationship to traditional maritime activity); Spencer v. Lunada Bay Boys, No. CV 16-02129 SJO (RAOx), 2016 WL 6818757, at * (C.D. Cal. July 22, 2016) (torts committed by individuals on surfboards lack a substantial relationship to traditional

maritime activity). In doing so, the district court expressly rejected the argument that the paddle used while paddle boarding made it more like a vessel, i.e., "a kayak or a rowboat," than a surfboard. Id.

Like the Central District of California, this Court finds that the pressing consideration in this analysis is what WSR was renting, not that WSR was renting it. WSR rents jet skis—personal watercrafts. The relationship between traditional maritime activity and WSR's rental of personal watercrafts for use on navigable waters is undeniable. See Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 201-02 (1996) (exercising admiralty jurisdiction over suit involving a jet ski accident); In re Mission Bay, ("Being a vessel, this jet ski has a maritime connection."); Rigsbee v. City and County of Honolulu, No. 17-cv-00532 HG-KSC, 2018 WL 5017610, at *3 (D. Haw. Oct. 16, 2018) ("Accidents involving jet skis are substantially related to maritime activities.").

The Court finds this suit falls within its admiralty jurisdiction.

C.   Anti-suit Injunction

The Ninth Circuit instructed this Court to dissolve its previously issued anti-suit injunction. See Dec. 18, 2019 USCA Mandate. WSR nonetheless continues to litigate the propriety of allowing Willis' state court suit to go forward, urging the Court to place limitations on those proceedings. See Opp'n at 8-9. The question of whether Willis' state court proceedings will prejudice WSR's limitation rights has become an unending carousel. See Tr. of 8/29/17 Proceedings at 39: 6-40:16, ECF

1  No. 44; Apr. 25, 2018 USCA Memo. at 3, ECF No. 69; Tr. of
2  7/30/19 Proceedings at 24:6-9; Nov. 26, 2019 USCA Memo. at 2-3.
3  The Court declines WSR's invitation to take another ride.
4      The Ninth Circuit's instruction to dissolve the anti-suit
5  injunction was unequivocal.  See Dec. 18, 2019 USCA Mandate.
6  This Court takes the Ninth Circuit's mandate to mean what it
7  says; no more, no less.  Moreover, the Court does not find that
8  any intervening changes in circumstance have, as WSR argues,
9  mooted the Ninth Circuit's instructions.  Contra Opp'n at 3-4.
10 The Court therefore dissolves its previously issued anti-suit
11 injunction.

    D.   Stay

    In Limitation Actions, district courts may exercise their discretion in deciding "whether the limitation question must await trial of the liability issue." Newton v. Shipman, 718 F.2d 959, 963 (9th Cir. 1983).  Ultimately, "[t]he district court should select the most efficient manner of proceeding." Id.  Willis argues the Langnes rule of abstention prescribes the most efficient course of action in single-claimant cases such as this one.  Mot. at 3-4 (citing Langnes v. Green, 282 U.S. 531, 541-42 (1931).  Under this rule:

> [T]he district court permits proceedings in state court to go forward on the question of liability and retains jurisdiction over any question that might arise as to the shipowner's right to limit his liability. If the shipowner either (1) wins in the state court or (2) loses, but only in an amount less than the value of his ship and its cargo, then the need for further proceedings in federal court is obviated. If the shipowner is found liable for more than the value of his ship and its cargo in the state action, further proceedings in the federal limitation action may be necessary, but only where the claimant contests the limitation.

See Mot. at 4 (quoting In re Complaint of McCarthy Bros., 83 F.3d 828 (7th Cir. 1996).

WSR disagrees that adhering to the Langnes rule would yield maximum efficiency here—namely, because the matter would get to trial more quickly if left in federal court.  This argument rests on the assumption that, absent a stay, this Court would hold a pretrial conference hearing in this case on September 11, 2020 "with a bench trial shortly to follow."  Opp'n at 10.  That assumption is no longer valid.  The Sacramento federal courthouse is currently closed to the public until further notice.  See General Order 618 (May 13, 2020).  When trials resume, criminal cases will take priority.  Given these unprecedented times, the Court finds little value in speculating as to when this matter would go to trial absent a stay.  But suffice it to say, WSR's argument does not persuade the Court to depart from the practice set forth in Langnes, 282 U.S. at 541-42.  The Court therefore stays further proceedings in admiralty pending the completion of Willis' suit in state court.

### III.   ORDER

For the reasons set forth above, the Court GRANTS Willis's motion to lift the anti-suit injunction and stay further proceedings in admiralty.

IT IS SO ORDERED.

Dated: July 27, 2020

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

9