B. OTIS FELDER (CSB No. 177628)
***CSB Certified Admiralty & Maritime Law Specialist***
WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER LLP
525 Market Street, 17th Floor
San Francisco, California 94105-2725
Telephone:    (415) 433-0990
Facsimile:     (415) 434-1370
Email:  Otis.Felder@wilsonelser.com

Attorneys for Petitioner & COUNTER DEFENDANT
WILLIAMS SPORTS RENTALS, INC. ("WSR")

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

IN <u>ADMIRALTY</u>

| | |
|---|---|
| IN RE: COMPLAINT AND PETITION OF WILLIAMS SPORTS RENTALS, INC. AS OWNER OF A CERTAIN 2004 YAMAHA WAVERUNNER FX 140 FOR EXONERATION FROM OR LIMITATION OF LIABILITY | ) Case No. 2:17-cv-00653-KJM-JDP ) ) ) Hon. Kimberly J. Mueller ) Chief United States District Judge ) ) **COUNTER DEFENDANT WSR'S** ) **MEMORANDUM OF POINTS AND** ) **AUTHORITIES IN SUPPORT OF MOTION** |
| MARIAN LATASHA WILLIS, on behalf of the Estate of RAESHON WILLIAMS, | ) **FOR SUMMARY JUDGMENT BASED ON** ) **THIRD-PARTY DEFENDANT** ) **THOMAS SMITH'S ILLEGAL CONDUCT** ) |
| *Respondent/Counter Claimant,* | ) [FRCP 56, Admiralty Rule F(8), & LR 260] |
| v. | ) |
| WILLIAMS SPORTS RENTALS, INC., | ) Hearing Date:   Friday, Nov. 3, 2023 ) Hearing Time:    10:00 a.m. |
| *Petitioner/Counter Defendant.* | ) Hearing Place:  Courtroom 3, 15th Floor |
| WILLIAMS SPORTS RENTALS, INC., | ) ) |
| *Petitioner, Counter Defendant, and* *Third-party Plaintiff,* | ) ) ) |
| v. | ) ) |
| THOMAS SMITH, KAI PETRICH, BERKELEY EXECUTIVES, INC., ZIP, INC., and DOES 1-10, | ) ) ) ) |
| *Third-party Defendants.* | ) ) |
| AND RELATED ACTIONS | ) ) ) |

## A.    Introduction

This action arises following the tragic drowning of Raeshon Williams when he fell off a personal watercraft (PWC), commonly referred to as a "jet ski," in California state territorial waters of Lake Tahoe more than seven years ago, in the twilight hours on a Saturday summer evening on August 13, 2016.  Williams drowned because he did not know how to swim, and despite his knowing his own abilities and limitations, including the obvious risk for a non-swimmer of drowning if he fell off a jet ski into the water, he decided to ride on the back of the PWC without a personal floatation device (PFD), also referred to as a life vest, contrary to California HARBOR & NAVIGATION CODE § 658.3(c) that requires he wear one.

Williams's mother, Marian Latasha Willis (Willis), alleges that the jet ski renter, Tommy Smith (Smith) is liable for letting her adult son ride on the PWC without wearing a PFD contrary to Section 658.3(c) and Smith's negligent operation of the jet ski he chartered.  According to Willis, Smith also violated federal laws, including Inland Rule 5, 33 U.S.C. § 2005, Inland Rule 6, 33 U.S.C. § 2006, Inland Rule 7, 33 U.S.C. § 2007, Inland Rule 8, 33 U.S.C. § 2008, and Inland Rule 18, 33 U.S.C. § 2018, in navigating the jet ski into its own wake causing both Smith and Williams to fall off.  See Claim, ¶ 7 (ECF No. 17).

In addition to claiming Smith's intentional conduct not only violated federal law but also the instruction he was provided by WSR before renting the jet ski and the terms of his rental agreement, Willis alleges Williams Sports Rentals, Inc. ("WSR"), as the registered owner of the jet ski, is liable for renting it to Smith.  She claims that WSR should have not done so because she claims it should have known Smith would let Williams illegally ride the watercraft hours after he rented it from WSR and miles from its rental center.  No evidence supports this speculation, and the District Court has thrice dismissed the factually devoid claim by Willis based on a pleaded but unproven negligent entrustment theory based on the nature of the allegations alone without yet reaching the issue of whether there is any evidence (or lack thereof) regarding the claim.

As discussed further below, WSR seeks summary judgment on the issues that it had no duty given the intentional and unforeseeable acts of Smith, as well as Williams, which caused the latter's drowning, and that either's conduct amounts to a superseding cause alleviating WSR of liability.

**B.       Procedural & Related Background**

Petitioner WSR commenced these admiralty proceedings under the Limitation of Liability Act (LOLA) 46 U.S.C. § 30529(c), and Admiralty Rule F(3) on March 28, 2017.  Complaint, ECF No. 1.  Since the filing of the LOLA action by WSR, the case, rather than be resolved by expedieted process as contemplated by Admiralty Rule F(3) and Fed. R Civ. P, Rule 1, has taken unexpected procedural turns, yet reaching the substance of any claim or defense. *In re Williams Sports Rentals, Inc.*, No. 2:17-cv-00653-JAM-EFB, 2017 U.S. Dist. LEXIS 51712 (E.D. Cal. Mar. 29, 2017), *stay denied by*, 2017 U.S. Dist. LEXIS 180593, 2017 WL 4923337 (E.D. Cal., Oct. 31, 2017), *dismissed by,* 2017 U.S. Dist. LEXIS 206845 (E.D. Cal., Dec. 15, 2017), *writ denied by, as moot Willis v. United States Dist. Court*, 2019 U.S. App. LEXIS 35487 (9th Cir. Cal., Nov. 26, 2019*), remanded with instruction*, 770 F. App'x 391, 2019 U.S. App. LEXIS 14693, 2019 WL 2156641, 2019 AMC 2901 (9th Cir. 2019), *remanded by, request denied by, without prejudice*, 786 Fed. Appx. 105, 2019 U.S. App. LEXIS 35442 (9th Cir. Cal., Nov. 26, 2019), *motion granted by, stay granted by*, 2020 U.S. Dist. LEXIS 133753, 2020 WL 4340153 (E.D. Cal., July 27, 2020), *related proceeding at, petition granted by, decision reached on appeal by Willis v. Superior Court,* 2021 Cal. App. Unpub. LEXIS 7968, 2021 WL 5998574 (Cal. App. 1st Dist., Dec. 20, 2021), *stay granted by,* 2022 U.S. Dist. LEXIS 222208 (E.D. Cal., Dec. 8, 2022).

As alleged in WSR's original LOLA Complaint and as remains undisputed, Raeshon Williams died by drowning on August 13, 2016 in the navigable, territorial waters of Lake Tahoe, approximately 100 yards from the California shore.  Complaint, ¶ 7; Willis' Answer, ¶ 7, ECF No. 16.  Claimant Willis asserts that at the time of his drowning, her son was employed by Zip, Inc. and was on a team-building work trip to South Lake Tahoe with serveral co-workers, including Smith.  Claim, ¶ 5, ECF No. 17.  During the early afternoon, Smith rented two jet skis from WSR. Id., ¶ 6; Complaint, ¶ 10. Hours later, shortly before 6:00 p.m., Smith, used his jet ski to attempt to ferry Williams from Timber Cove to El Dorado Beach where the group had rented a house for the weekend.  Id., ¶ 5-6.  None of Smith's action after he left  the rental office hours before and miles away was or could be with WSR's privity or knowledge.

/ / /

As Willis asserts, Smith carried Williams on the jet ski contrary to WSR's policy that only one person, Smith, could be on the jet ski at a time.  *See* <u>Felder Decl</u>. ¶ 7 & Exh. E thereo; *see also* Exh. <u>Usher Decl</u>., ¶¶ 4-5, <u>ECF No. 57-2</u>.   As Willis further points out, Smith did so in violation of his written charter party with WSR and his written agreement that he would comply with all U.S. Coast Guard and California rules and regulations, including as expressly specified therein that "**ALL RIDERS MUST WEAR A PROPERLY FITTED, U.S. COAST GUARD APPROVED LIFE JACKET.**" <u>Id</u>., ¶¶ 9-10.  It is undisputed that Smith and Williams were not wearing a life jacket (PFD) when they fell of the jet ski (PWC) contrary to these terms and the California HARBOR & NAVIGATION CODE § 658.3(c).  <u>Id</u>.

Petitioner and Third-Party Plaintiff WSR has already moved to seek a default judgment against defaulting Third-Party Defendants Smith and his company, Berkeley, based on WSR's Third-Party Complaint ("TPC") (<u>ECF No. 92</u>), including its Exhibit A (Smith's Rental Agreement with WSR) (<u>ECF No. 92-1</u>), Exhibit B (Smith's Release and Waiver Form with WSR) (<u>ECF No. 92-2</u>), and Exhibit C (Smith's Safety Checklist with WSR) (<u>ECF No. 92-3</u>).  Even after notifying Smith of the potential for default, the default, itself, as well as the motion seeking a default judgment, Smith has neither appeared nor refuted the charges in any way.  Based on similar reasons of undisputed culpability by Smith for intentional and illegal acts resulting in the drowning of Williams, WSR seeks summary judgment so as to be dismissed from the proceedings.

### C.    Undisputed Material Facts

While other facts are unrefuted, WSR submits that with respect to the two principal issues raised by this motion, the following five, material facts cannot be and are undisputable:

1.  Raeshon Williams (Deceased) (hereinafter "decedent") died by drowning, on or about August 13, 2016, in California territorial waters of Lake Tahoe, approximately 100 yards from the California shore (the "Incident").  *See also* WSR's Separate Statement of Undisputed Facts (Separate Statement), filed concurrently herewith, Undisputed Fact **(UF) No. 1** (Supported by Complaint (ECF No. 1) & Willis Answer (ECF No 16) at ¶ 7; Willis Response Statement of Undisputed Facts (ECF No. 35-1) at ¶ 3, attached as Exhibit A ("Exh.") to Felder Declaration ("Decl.'); Joint Status Report at ¶ 4 (ECF No. 170), attached as Exh. B to Felder Decl.).

1    2.  At the time of the Incident, WSR owned a Yamaha Waverunner ("the Vessel"). *See also*

2    WSR's Separate Statement, **UF No. 2** (Supported by Complaint & Answer at ¶ 4; Willis Response

3    Statement of Undisputed Facts at ¶ 6; Joint Status Report at ¶ 10).

4    3.  During the early afternoon of August 13, 2016, WSR rented the Vessel to Thomas Smith

5    ("Smith"). *See also* WSR's Separate Statement, **UF No. 3** (Supported by Willis Response

6    Statement of Undisputed Facts at ¶ 7; Joint Status Report at ¶ 11).

7    4.  Shortly before 6 p.m., Smith departed Timber Cove with Decedent sitting behind him and

8    navigated the Vessel directly into an on-coming wake so as he and Decedent were thrown off into

9    the water where Decedent drowned. *See also* WSR's Separate Statement, **UF No. 4** (Supported by

10   Willis Response Statement of Undisputed Facts at ¶¶ 13-14; Joint Status Report at ¶ 12).

11   5.  Smith and Decedent were not wearing a personal floatation device ("PFD") at the time of

12   the Incident. *See also* WSR's Separate Statement, **UF No. 5** (Supported by Willis Response to RFA

13   Nos. 16 (admitting that South Lake Tahoe Police report indicated that Smith was not wearing a

14   personal floatation device at the time of the Incident.") and RFA Nos. 17 & 23 attached as Exh. K

15   to Felder Decl. *See also* Montanari Decl. (Exh C to Felder Decl.); Alameda Superior Court Order

16   Denying Summary Judgment at pp. 1, 2& 4 (noting Petrich asserting that "Decedent chose to ride

17   on the jet ski without a life jacket despite the fact that he could not swim" and stated to

18   investigating Officer Carlquist that "Smith and Decedent were not wearing any type of flotation

19   device when they left the beach") (Exh. D to Felder Decl.); Willis Memo. at 2:17-25 &  3:2-6

20   (contending "PETRICH also admitted to the police that he knew his and SMITH's charter

21   agreement prohibited passengers on their two jet skis and required anyone who use either vessel to

22   wear a life jacket [citation]") (Exh. E to Felder Decl.); Hillsman Decl. at ¶ 2 and Exh. 1 thereto at

23   8:18-20 (attesting to lack of PFD as cause of drowning) 12:12-17 (affirming Petrich admitting

24   Smith and Williams not wearing any type of PFD upon leaving beach) 20:7-14 (Smith admitting

25   that Williams on Vessel without PFD) (Exh. F to Felder Decl.); Willis Response to Interrog. Nos.

26   11 & 42 (incorporating WILLIS00001-266) and WILLIS00001-17 (Exhs. G & H to Felder Decl.);

27   Willis Response to Interrog. No. 9 (incorporating WILLIS0000267-305 as verified response) and

28   WILLIS000267-205 (Exhs. I & J to Felder Decl.).

1

### D.    Discussion

2

### 1.    Summary Judgment Standard

3

A Court should grant a motion for summary judgment when there is no genuine issue of

4

material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c);

5

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  An issue is "genuine" only if there

6

is a sufficient evidentiary basis upon which the trier of fact, in this case the Court as there is no

7

jury, could find for the nonmoving party, and a fact is "material" only if it might affect the

8

outcome of the suit under the applicable rule of law.  *See Anderson*, 477 U.S. at 248.

9

The moving party bears the initial burden of informing the court of the basis for the motion

10

and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions,

11

or declarations that demonstrate the absence of a triable issue of material fact on a particular issue

12

or defense.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On issues where the moving party

13

does not have the burden of proof at trial, such as demonstrating the existence of a duty based on

14

foreseeability, the moving party is required only to show that there is an absence of evidence to

15

support the non-moving party's case.  Fed. R. Civ. P. 56(e); *Celotex,* 477 U.S. at 324 & 326. The

16

Court then may grant summary judgment on all or part of the claim, if the non-moving party does

17

not proffer admissible evidence creating a material dispute.  *See id.* at 325.

18

To defeat a summary judgment motion, the non-moving party may not merely rely on her

19

pleadings (as was the case with a Rule 12(b) motion), or on her own conclusory statements. *Id.*

20

Rather, she must affirmatively present specific admissible evidence sufficient to create a genuine

21

issue of material fact for trial by the Court sitting in admiralty. *Id.*

22

Furthermore, she may not merely attack or discredit the moving party's evidence.  *See Nat'l*

23

*Union Fire Ins. Co. v. Argonaut Ins. Co*., 701 F.2d 95, 97 (9th Cir. 1983).  "Evidence may be

24

offered 'to support or dispute a fact' on summary judgment only if it could be presented in an

25

admissible form at trial."  *Southern California Darts Ass'n v. Zaffina,* 762 F.3d 921, 925-26 (9th

26

Cir. 2014) (citing *Fraser v. Goodale,* 342 F.3d 1032, 1036-37 (9th Cir. 2003), *cert. denied,* 541

27

U.S. 937 (2004)). *See also, for example, Strick v. United Ret. Plan Consultants*, No. 2:16-cv-

28

08206-AFM, 2018 U.S. Dist. LEXIS 238300, at *10-11 (C.D. Cal. July 13, 2018) (granting

1   summary judgment based on superseding cause and noting also "it is insufficient for Plaintiffs

2   merely to present a lawyer's argument without evidence'); *Houngviengkham v. Schyman*, 2023

3   U.S. Dist. LEXIS 79123, *16 (C.D. Cal. May 5, 2023) (granting summary judgment for defendant

4   on alternative grounds of either being unforeseeable and thus no duty, and/or superseding cause as

5   to criminal acts).

6       "Mere allegation and speculation do not create a factual dispute for purposes of summary

7   judgment*." Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) (quoting *Nelson v. Pima*

8   *Community College,* 83 F.3d 1075, 1081-82 (9th Cir. 1996)). Similarly, conclusory statements are

9   insufficient to defeat summary judgment. *Comite de Jornaleros de Redondo Beach v. City of*

10   *Redondo Beach,* 657 F.3d 936, 950 n.9 (9th Cir. 2011) (*en banc*), *cert. denied*, 565 U.S. 1200,

11   (2012). Moreover, the failure to furnish any proof establishing an essential element of a cause of

12   action renders all other facts immaterial. *Id.* at 322-33. This is especially the case where, as here,

13   the acts by Smith were unforeseeable as a matter of law and amount to a superseding cause.

14       Given the pendency of these proceeding since March 28, 2017 and that the parties have

15   previously commenced discovery both here and in the related state court case initiated by Willis

16   against Smith and others, the issue of Smith's intentional and illegal conduct in causing the

17   drowning of Williams is now appropriate for and should be resolved by summary judgment for the

18   two principal basis as discussed below concerning lack of duty and superseding cause.

19       **2.**    **There is No Evidence WSR Breached Any Duty to Williams.**

20       Based on the undisputed evidence in this case, Willis cannot prove WSR negligently

21   entrusted the jet ski to Smith as his criminal acts are unforeseeable as a matter of law. See

22   *Houngviengkham v. Schyman*, 2023 U.S. Dist. LEXIS 79123, *16 (C.D. Cal. May 5, 2023)

23   (granting summary judgment in part due to lack of duty for criminal acts of others). *See also*

24   *Hedrick v. Western Outdoor News (In re Owen)*, Case No. 2:11-CV-00196-JAM-GGH, 2013 U.S.

25   Dist. LEXIS 31118 *2-3, at ¶6 (E.D. Cal. March 5, 2013) citing *McMahon v. Pier 30 Ltd.*

26   *Partnership*, 2003 U.S. Dist. LEXIS 22178, 2003 WL 22939233 *4 (N.D. Ca. 2003) (noting "The

27   issue of whether a defendant owes a plaintiff a duty of care is a question of law for the court . . . a

28   person is under no duty to protect another from peril which is not of his or her own making.").

As a preliminary matter in assessing the non-existence of a duty as to the activity involved in this case, it is well known that there is an open and obvious risk of drowning if not wearing a PFD as required by law, which multiple courts have explained:

> As a matter of common knowledge, jet skiing is an active sport involving physical skill and challenges that pose a significant risk of injury, particularly when it is done—as it often is—together with other jet skiers in order to add to the exhilaration of the sport by racing, jumping the wakes of the other jet skis or nearby boats, or in other respects making the sporting activity more challenging and entertaining.

*Whelihan v. Espinoza*, 110 Cal.App.4th 1566, 1572 (2003). *See also Hodges v. Summer Fun Rentals, Inc.* 203 Fed. Appx. 89, 91, 2007 AMC 599 (9th Cir. 2006) (no duty by jet ski rental company to warn of inherent danger "one might fall off a PWC while, during, or after jumping a wake" as "[t]hese dangers are obvious to any person of ordinary intelligence.")).  "Consequently, it is the type of sporting activity that meets the criteria" for concluding as a matter of law there is no duty by the a rental company in providing the means to engage in jet skiing and its obvious risks, including falling off the jet ski while jumping wakes, inherent in an active recreational activity. (*Whelihan*, 110 Cal.App.4th at 1572.  *See also Peart v. Ferro*, 119 Cal.App.4th 60, 67 (2004); *Truong v. Nguyen*, 156 Cal.App.4th 865, 875 (2007).

Indeed, when such inherently risky activity is on navigable waters such as Lake Tahoe invoking admiralty jurisdiction, general maritime law likewise imposes no duty on rental companies, merely as registered vessel owners, as to risks voluntarily undertaken as part of participating in the activity, especially with respect to chartered (rented) vessels being operated by others.  See *In re Fun Time Boat Rental & Storage, LLC*, 431 F. Supp. 2d 993, 101 (D. Ariz. 2006) (no duty under maritime law to train watercraft renters) *citing Craine v. United States,* 722 F.2d 1523, 1525 (11th Cir. 1984) ("The law imposes no requirement that one who rents equipment such as a boat or vehicle instruct the renter on every possible danger that could be faced.").

Consequently, it has long been held that a vessel's registered owner (WSR) cannot be liable for actions of the charterer (Smith), as no relationship exists with the third party (Williams) when the vessel is under a demise charter (rented) to another.  See *Vitozi v. Balboa Shipping Co., Inc.,* 69 F. Supp. 286 (D. Mass. 1946) citing *The Del Norte,* 119 F. 118, 119 (9th Cir. 1902).

1    However, a vessel owner, which charters (rents) a vessel to another, may be liable to a third

2    party only if they can prove negligent entrustment by the registered vessel owner.  *See Churchill v.*

3    *The F/V Fjord,* 892 F.2d 763, 771 (9th Cir. 1988) ("Section 390 provides that one who supplies a

4    chattel for another's use whom the supplier 'knows or has reason to know' is likely to use the

5    chattel in a manner 'involving unreasonable risk of physical harm to himself and others' is subject

6    to liability for the physical harm resulting to them) (citing Restatement (Second) of Torts § 390);

7    *In re Fun Time Boat Rental & Storage, LLC*, 431 F. Supp. 2d 993, 1001 (D. Ariz. 2006) ("While

8    maritime law recognizes the tort of negligent entrustment, such a tort requires that the boat owner

9    knew or should have known that the person to whom the boat was entrusted (in this case, Osborne)

10   was likely to use it in a dangerous manner.") (citations omitted); *Joyce v. Joyce*, 975 F.2d 379, 385

11   (7th Cir. 1992) ("[T]he essential thrust of the tort of negligent entrustment is that a ship owner can

12   be held liable for negligent entrustment only if he knows or has reason to know that the person

13   being entrusted is incapable of operating the vessel safety."); *Pritchett v. Kimberling Cove, Inc.*,

14   568 F.2d 570, 575-76 (8th Cir. 1977) ("Four elements of proof are necessary to establish negligent

15   entrustment under Missouri law: (1) entrustment of a chattel (directly or through a third party) to

16   another; (2) likelihood that the person to whom the chattel is entrusted will, due to his youth,

17   inexperience, or otherwise, use the chattel in a manner involving an unreasonable risk of harm to

18   himself and others; (3) knowledge of the entrustor (actual or imputed) of such likelihood; and (4)

19   proximate cause of the harm to the plaintiff by the conduct of the entrustee.").

20   The first issue is whether Willis can show under the circumstances that WSR had a duty,

21   namely a reason to know at the time of rental that Smith would engage in illegal conduct in riding

22   himself and allowing Williams aboard the jet ski hours after Smith renting it from WSR and miles

23   away from where he rented it from them.  "The existence and scope of any such duty are legal

24   questions for the court." *Houngviengkham*, 2023 U.S. Dist. LEXIS 79123, *11 ("Duty, being a

25   question of law, is particularly amenable to resolution by summary judgment.")(citations omitted);

26   *In re Owen*, Case No. 2:11-CV-00196-JAM-GGH, 2013 U.S. Dist. LEXIS 31118 *2-3, at ¶6. In

27   cases involving criminal activity of another, the "dispositive issue remains the foreseeability of the

28   criminal act. Absent foreseeability of the particular criminal conduct, there is no duty to protect the

1    plaintiff from that particular type of harm." *Houngviengkham*, 2023 U.S. Dist. LEXIS 79123, *13

2    (citations omitted).

3      Here, it is undisputed that Raeshon Williams (Deceased) (hereinafter "decedent") died by

4    drowning, on or about August 13, 2016, in California territorial waters of Lake Tahoe,

5    approximately 100 yards from the California shore (the "Incident"). **UF No. 1**. At the time of the

6    Incident, WSR owned a Yamaha Waverunner ("the Vessel"). **UF No. 2**. During the early

7    afternoon of August 13, 2016, WSR rented the Vessel to Thomas Smith ("Smith"). **UF No. 3**.

8    Shortly before 6 p.m., Smith departed Timber Cove with Decedent sitting behind him and

9    navigated the Vessel directly into an on-coming wake so as he and Decedent were thrown off into

10    the water where Decedent drowned. **UF No. 4**. Smith and Decedent were not wearing a personal

11    floatation device ("PFD") at the time of the Incident. **UF No. 5**.

12      Given these facts, neither Willis nor anyone else making a claim can show that there was a

13    likelihood that that Smith would violate his rental terms and the law in using the jet ski in the

14    manner he did so as to involve an unreasonable risk to Williams, and more importantly, that WSR

15    had knowledge (actual or imputed) of such likelihood.

16      As such, there are no genuine issue in dispute that would preclude summary judgment for

17    WSR and on this basis alone, judgment in its favor should be granted. *See Loomis v. Cornish*, 836

18    F.3d 991, 997 (9th Cir. 2016) ("[M]ere allegation and speculation do not create a factual dispute

19    for purposes of summary judgment." (quoting *Nelson v. Pima Community College*, 83 F.3d 1075,

20    1081-82 (9th Cir. 1996) (alternation in original)).

21      **3.**      **The Acts of Smith and Williams Are Superseding Causes.**

22      The criminal actions of others act as superseding causes such as to prevent a defendant,

23    even if its conduct fell below a standard of reasonable care, from being held liable for any

24    negligence, if such exists. See *Strick v. United Ret. Plan Consultants,* No. 2:16-cv-08206-AFM,

25    2018 U.S. Dist. LEXIS 238300, at *10-11 (C.D. Cal. July 13, 2018) (finding plaintiff had not

26    provided any evidence permitting a finding that criminal act in that case was not highly unusual,

27    extraordinary, and unreasonably likely to happen). *See also O'Keefe v. Inca Floats*, No. C-97-1225

28    VRW, 1997 WL 703784, 1997 U.S. Dist. LEXIS 17088, at *11, 1998 AMC 645 (N.D. Cal. Oct.

31, 1997) ("independent illegal acts of third parties are deemed unforeseeable and therefore, the sole proximate cause of the injury which excludes negligence of another as a cause of injury."). *See, generally, Jesse v. Malcmacher,* No. 5:15-cv-01677-SVW-DTB, 2016 U.S. Dist. LEXIS 191944, at \*29 (C.D. Cal. Apr. 5, 2016) ("[T]he illegal acts of third parties are unforeseeable as a matter of law.")(citing O'Keefe, supra, 1997 WL 703784, at \*4).

   Here, Willis has not demonstrated that the illegal acts by Smith in this case not only alleged by her but also asserted by WSR are not superseding causes relieving WSR of any liability. Without such evidence, WSR, even if negligent in some way that Willis has yet to show with any admissible evidence, would not be liable as the superseding acts of the Smith and Williams bar recovery against WSR.

   As the U.S. Supreme Court explained:

> The doctrine of superseding cause is . . . applied where the defendant's negligence in fact substantially contributed to the plaintiff's injury, but the injury was actually brought about by a later cause of independent origin that was not foreseeable. It is properly applied in admiralty cases.
>
> ". . . The superseding cause doctrine can be reconciled with comparative negligence. Superseding cause operates to cut off the liability of an admittedly negligent defendant, and there is properly no apportionment of comparative fault where there is an absence of proximate  causation." 1 T. Schoenbaum, Admiralty and Maritime Law § 5-3, pp. 165-166 (2d ed. 1994).

*Exxon Co. v. Sofec*, 517 U.S. 830, 837 (1996).  As another California district court has also explained:

> A superseding cause is a "later cause of independent origin" that prevents an actor from being liable for harm caused by that actor's negligence. *Farr v. NC Machinery Co*., 186 F.3d 1165, 1168-69 (9th Cir. 1999). A superseding cause is more than a subsequent act in a chain of causation, but must be "an act that was not reasonably foreseeable at the time of the defendant's negligent conduct." *USAir v. United States Dep't of the Navy*, 14 F.3d 1410, 1413 (9th Cir. 1994). An act is not foreseeable if, when "looking at the matter with hindsight, it seems extraordinary." *United States v. Pineda-Doval*, 614 F.3d 1019, 1029 (9th Cir. 2010). Where a third person's intentional tort or crime breaks the chain of causation, California law summarizes the principle of superseding cause as follows: "'The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the first person to commit such a tort or crime, unless the actor at the time of his negligent

conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.'" *Kane v. Hartford Accident & Indemnity Co.*, 98 Cal. App. 3d 350, 360, 159 Cal. Rptr. 446 (1979) (quoting Rest.2d Torts, §448).

*Strick v. United Ret. Plan Consultants, No*. 2:16-cv-08206-AFM, 2018 U.S. Dist. LEXIS 238300, at *10-11 (C.D. Cal. July 13, 2018) (finding plaintiff had not provided any evidence permitting a finding that criminal act in that case was not highly unusual, extraordinary, and unreasonably likely to happen).  *See also O'Keefe v. Inca Floats,* No. C-97-1225 VRW, 1997 WL 703784, 1997 U.S. Dist. LEXIS 17088, at *11, 1998 AMC 645 (N.D. Cal. Oct. 31, 1997) ("independent illegal acts of third parties are deemed unforeseeable and therefore, the sole proximate cause of the injury which excludes negligence of another as a cause of injury*."*).  *See, generally*, *Jesse v. Malcmacher*, No. 5:15-cv-01677-SVW-DTB, 2016 U.S. Dist. LEXIS 191944, at *29 (C.D. Cal. Apr. 5, 2016).

As discussed above, it is undisputed that Williams was the victim of illegal acts by Smith as asserted by Willis concerning various federal laws as well as both violated  California HARBOR & NAVIGATION CODE § 658.3(c) in state territorial waters.  **UF Nos 1-5.**  Neither Willis nor anyone else can demonstrate that WSR knew of such actions were going to be undertaken by Smith hours have he had rented the jet ski and proceeded in this way miles from WSR's rental office.  Based on these facts, the illegal acts by Smith were unforeseeable superseding causes as was those of Williams.  Accordingly, Willis cannot demonstrate any genuine dispute as to causation, and as a matter of law, summary judgment should be granted.

**E.      Conclusion**

Based on the foregoing and its accompanying moving papers and the record in this action, WSR seeks summary judgment in its favor on all claims and exoneration in this case.

Dated:  September 29, 2023             Respectfully Submitted,

**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**

By: _____

B. Otis Felder
Attorneys for Petitioner, Counter Defendant,
& Third-Party Plaintiff
***WILLIAMS SPORTS RENTALS, INC***.