| | |
|---|---|
| The Veen Firm, P.C.<br>Attn:  Label, Anthony L.<br>20 Haight St.<br>San Francisco, CA   94102____ | Lewis Brisbois Bisgaard & Smith LLP<br>Attn:  Krieger, Lynn L.<br>333 Bush Street<br>Suite 1100<br>San Francisco, CA   94104-2872 |

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Willis<br>　　　　　　　Plaintiff/Petitioner(s)<br>VS.<br><br>Zip, Inc.<br>　　　　　　　Defendant/Respondent(s)<br>(Abbreviated Title) | No. RG17866531<br><br>Order<br><br>Motion for Summary Judgment<br>Denied |

The Motion for Summary Judgment filed for Kai Petrich and Zip, Inc. was set for hearing on 12/20/2019 at 10:00 AM in Department 22 before the Honorable Jeffrey Brand.  The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  The motion by Defendants Zip, Inc., and Kai Petrich (collectively "Defendants") for summary judgment against the Complaint by Plaintiff Marian Latasha Willias, ("Plaintiff") as personal representative of the Estate of Raeshon Williams ("Decedent") is DENIED.

In this action for wrongful death, Plaintiff alleges that Decedent went to Lake Tahoe on a weekend team-building exercise with employees of Defendants Zip, Inc., and Berkeley Executives, including Defendants Thomas Smith ("Smith") and Kai Petrich ("Petrich").  It is undisputed that Decedent was employed by Zip, Inc., ("Zip") in sales/marketing at the time of his death, and that Petrich is the founder and operator of Zip. (Undisputed Material Facts ("Fact") No. 2)  Smith owned the firm Berkeley Executives.  (Fact No. 3.)   It is undisputed that attendance at the event was voluntary, that Decedent and the other Zip employees who came to Lake Tahoe were not paid to be present and that Petrich did not send out a formal invitation to employees to spend the weekend at the house he was renting.  (Facts Nos. 5-7.)   Defendants also assert that they did not pay decedent's expenses for the weekend, but only provided the rental house, there was no set program or schedule for weekend, and Petrich does not recall speaking to or seeing Decedent prior to the incident.  (Facts Nos. 8, 9.)

During the weekend, Smith and Petrich rented Wave Runner jet skis. (Fact No. 10.)  Plaintiff alleges that the jet skis were rented by all named Defendants.   Decedent rode on the back of the jet ski being operated by Defendant Smith.  Plaintiff alleges that Defendants Petrich, Zip, Inc., and Berkeley Executives negligently ordered, directed, or permitted Defendant Smith to use the jet ski to ferry Decedent across Lake Tahoe from Timber Cove to El Dorado Beach.  Plaintiff alleges that this was part of the team-building exercise and Defendants were acting in the course and scope of their employment.

Plaintiff alleges that Smith negligently operated the jet ski at high speed and he and Decedent were thrown overboard.  Decedent was not wearing a life jacket and drowned.  Plaintiff alleges that the jet ski was a "vessel" within the meaning of Lozman v. City of Riviera Beach (2013) 568 U.S. 115, and In re Mission Bay Jet Sports, LLC (9th Cir. 2009) 570 F.2d 1124, 1127.  Plaintiff alleges that Smith violated

---

Order

Inland Rules 5, 6, 7, 8, and 18 (33 U.S.C. secs. 2005, 2006, 2007, 2008, and 2018). Plaintiff alleges that her cause of action for wrongful death arises under Moragne v. State Marine Lines, Inc. (1970) 398 U.S. 375, and General Maritime Law of the United States.

Defendants assert that Petrich did not ask Decedent to ride on the back of Smith's jet ski, and did not see him get on or ride the jet ski with Smith. (Facts Nos. 12, 13.) Defendants assert that Decedent chose to ride on the jet ski without a life jacket despite the fact that he could not swim. (Fact No. 14.)

Defendants argue that maritime law does not apply in this case, because in maritime wrongful death cases where no federal statute provides applicable relief or a standard of care, and the decedent was not a seaman, longshore worker, or otherwise engaged in the maritime trade, maritime standards of care and remedies are non-existent and thus non-preemptive of state law. (Yamaha Motor Corp. v. Calhoun (1996) 516 U.S. 199, 202.) Defendants contend that Plaintiff's complaint alleges that the employer/employee relationship between decedent and Defendants created a duty of care. Defendants conclude that because the applicable duty of care is not found in maritime law, state law remedies and standards are applicable in this case.

Zip contends that the court should grant summary judgment and dismiss Zip because the complaint alleges that Decedent was on a work trip to Lake Tahoe at the time of the incident and Zip was his employer. Zip argues that to the extent Plaintiff is alleging that Decedent's death occurred in the course and scope of employment, the workers compensation scheme provides the exclusive remedy against Zip. (Labor Code secs. 3600, 3602.) Zip acknowledges that maritime workers are not generally governed by workers compensation statutes, but argues that under Yamaha, state remedies may apply where non-maritime workers are involved. Defendant Zip concludes that to the extent Plaintiff contends and the evidence shows that the duty of care owed to Decedent arose from the employer/employee relationship, Zip should be dismissed because Plaintiff's remedies against Zip will be determined in a workers compensation tribunal.

Defendants contend that under California law, they owed no duty of care to prevent Decedent from riding on the back of the jet ski operated by Smith. Defendants rely on the rule that in the absence of a special relationship, there is no duty to act to prevent harm to third persons unless one has created the peril. (Carlsen v. Koivumaki (2014) 227 Cal.App.4th 879, 883.) Defendants contend that the evidence shows they did not create the risk of harm because jet skiing was not part of any planned weekend program, there was no scheduled program for the weekend, Defendant Petrich never saw or spoke with Decedent during the weekend, Decedent did not ride on the back of Defendant Petrich's jet ski, and Defendant Petrich did not see Decedent get on the jet ski operated by Defendant Smith and did not suggest this to Decedent or Defendant Smith.

Defendants also contend that they cannot be liable for the harm caused by Smith based on a joint venture theory of liability. First, Defendants assert that maritime law does not recognize the joint venture concept. (Simmons v. Ware (2013) 213 Cal.App.4th 1035, 1052.) Second, Defendants argue that a joint venture exists only when the parties jointly undertake a single business enterprise for profit. (Id. at pp. 1052-1053.) Defendants contend that it is undisputed that Plaintiff cannot establish the requisite elements of joint control of the venture, sharing of the profits, and ownership interests of each party in the business enterprise. Defendants assert that the facts are incompatible with the concept of a joint business enterprise for profit between Defendants on one hand, and Defendant Smith and his company on the other, because Defendant Petrich was in Tahoe to celebrate Defendant Smith's birthday, he invited some employees to join him for the weekend as a reward for this job performance, and Defendants Petrich and Smith rented the jet skis for fun.

In opposition, Plaintiff contends that some of Defendants' assertions are disputed. In response to Defendant Petrich's assertions that he does not recall seeing or speaking with Decedent prior to the incident (Fact No. 9), that he did not suggest or request that Decedent ride on the back of Defendant's jet ski (Fact No. 12), Plaintiff cites to the deposition of Officer Steve O'Brien, pp. 42:23-45:16, who testified that Defendant Smith told him that Decedent asked Smith for a ride on the jet ski, that Smith did not want to do it because he was tired, but Petrich asked him to give Decedent a ride as a favor. This evidence creates a triable issue with regard to Facts Nos. 9 and 12. In response to Defendants' assertion that Petrich did not see Decedent get on or ride the jet ski with Defendant Smith, (Fact No. 13), Plaintiff cites the deposition of Officer Carlquist, who testified that Petrich told her that he asked Smith to give Decedent a ride and also confirmed that Smith and Decedent were not wearing any type of flotation device when they left the beach. Fact 13 is also disputed. Plaintiff also cites the testimony of

Officer Carlquist, p. 91:7-21, for her testimony that Petrich told her he was aware that the rental agreement prohibited passengers on the jet skis and required anyone who used the vessels to wear a life jacket. Plaintiff attaches the rental agreement, which shows that Petrich and Smith jointly rented the two jet skis. (Exh. 3.)

Plaintiff contends that her claims in this action are not based on breach of the duty of care arising out of the employer-employee relationship between Decedent and Zip, but upon general maritime. Plaintiff is correct. Although the Complaint alleges that Decedent went to Lake Tahoe as part of a team-building work trip, and that Smith and Petrich were acting within the course of scope of their employment with Berkeley Executives and Zip, respectively, she does not allege that Decedent was acting in the course and scope of his employment at the time of his death, or that Defendants owed a duty of care to Decedent based on his status as an employee of Zip. Instead, Plaintiff specifically alleges that her wrongful death action is based on general maritime law under the holding in Moragne and subsequent federal opinions, including Yahama. Defendants' Facts Nos. 4-11 are consistent with the conclusion that neither Smith nor Decedent were acting in the course and scope of employment during the weekend trip, or while rides were being given on the jet skis. For that reason, Decedents' argument that the duty owed to Decedent arose from the employment relationship rather than maritime law does not provide a viable ground for an order granting summary judgment.

Similarly, the argument that the court should grant summary judgment in favor of Zip because the claims against Zip are barred by the exclusive remedy provided by the workers compensation scheme is not supported. The allegations and evidence before the court do not show that Decedent was acting in the course and scope of employment at the time of the accident. Further, when maritime law is applicable, the exclusive remedy provided by the Workers Compensation scheme cannot be applied when it conflicts with and undermines the remedies provided by federal maritime law. (King v. Universal Elec. Constr. (9th Cir. 1994) 39 F.2d 1398, 1402.)

Plaintiff asserts that the holding in Yamaha does not create doubt about the applicable law, because it does not change the rule that maritime law applies whenever the precipitating incident occurred during the operation of a vessel upon navigable water. (Yahama, supra, 516 U.S. at p. 206.) Plaintiff contends that the holding in Yahama stands for the proposition that state law remedies may be available to plaintiffs in non-seaman wrongful death actions to supplement the remedies provided by federal maritime law, but fault and liability issues remain governed by general federal maritime law in such situations. (In re Antill Pipeline Const. Co., Inc. (E.D. La. 2011) 866 F.Supp.2d 563, 567; Matheny v. Tennessee Valley Authority (M.D. Tenn. 2007) 503 F.Supp.2d 917, 922.)

Plaintiff's interpretation of the holding in Yahama is correct. In Yahama, the court explained that because maritime law initially failed to afford a cause of action for wrongful death, federal admiralty courts tempered the harshness of that rule by allowing recovery under state law allowing recovery for wrongful death. (Id. at pp. 206-207.) This situation lasted until the decision in Moragne v. States Marine Lines, Inc. (1970) 398 U.S. 375, 409 ("Moragne"), recognized a maritime cause of action for wrongful death based on violation of maritime duties. (Id. at p. 208-209.) The issue before the court in Yamaha was whether the recognition of a maritime remedy for wrongful death precluded reliance on remedies provided by state law in cases involving nonseafarers in territorial waters. The court found that the holding in Moragne is intended to expand the available remedies under maritime law, not contract them, and that Moragne is not hostile to concurrent application of state law statutes. (Id. at pp. 210-214.) The court concluded that the damages available to the plaintiff in that case for the jet ski death of decedent were properly governed by state law. (Id. at p. 216.) Thus, the holding in Yamaha does not support the conclusion that maritime standards of care are not applicable where the defendant is not a maritime employer or ship owner/operator. To the contrary, the opinion provides no support for the conclusion that maritime law does not provide the standard of care, but instead holds that state law may provide the appropriate remedy to supplement the maritime law remedy. (See also Matheny v. Tennessee Valley Authority, supra, 503 F.Supp.2d at pp. 922-923.)

Other than the holding in Yamaha, Defendants do not offer any undisputed facts or cite any cases that support the contention that maritime law is not applicable. Defendants' remaining arguments in support of the motion appear to assume that California law provides the applicable standard for determining Defendants' liability. In particular, the argument that Defendants owed no duty of care to Plaintiff in the absence of a special relationship or conduct that created the risk of harm is explicitly based on California law. Defendants have not offered evidence or made a persuasive argument establishing that California law, rather than general maritime law, supplies the applicable standard for assessing the

existence of a duty of care, so the motion fails on that basis.

Plaintiff argues that Defendants negligently breached a duty imposed by maritime law. Specifically, Plaintiff contends that vessel owners owe a duty of reasonable care to passengers, and Defendant Zip and Petrich were deemed vessels owners because they chartered the jet ski involved in Decedent's death. Plaintiff argues that Petrich violated those duties when he asked Smith to give Decedent a ride on the jet skis they rented, even though he and Smith both admit that they knew the charter agreement prohibited them from taking passengers on the vessels, and that anyone riding on the jet skis was required to wear a life jacket. In their moving papers, Defendants did not argue that they owed no duty of care under maritime law under the circumstances in this case, so Plaintiff's argument on this issue, although persuasive, is not necessary to the court's ruling.

Plaintiff contends that there is a triable issue with regard to whether Petrich and Smith were engaged in a joint venture. In support of that argument, Plaintiff cites evidence that Petrich and Smith jointly shared the cost of the two jet skis, and that Petrich and Smith told Officer Carlquist that they both invited employees from their respective companies to the weekend retreat as a team-building and group activity for their businesses. Plaintiff's evidence does not create a triable issue with regard to the issue of joint venture because it is undisputed that Smith and Berkeley Executives did not join with Petrich and Zip to hold a joint retreat at Lake Tahoe or to rent jet skis for the purpose of making a profit to be shared equally. (Simmons v. Ware, supra, 213 Cal.App.4th at pp. 1052-1053.) The evidence is undisputed that Decedent's attendance at the rental house and his ride on the jet ski was voluntary and recreational in nature and not part of an attempt by Defendants to make money, whether by joint venture or otherwise. However, Defendants do not explain why the failure of the joint venture allegation is dispositive of Plaintiff's claims against Defendants, and it is not apparent to the court. Plaintiff alleges that Defendants negligently directed, ordered, or permitted Smith to use the jet ski to transport Decedent on Lake Tahoe. (Complaint, para. 13.) This allegation is not dependent upon the claim that Defendants Petrich, Zip, Smith, and Berkeley Executive were engaged in a joint venture.

The court's ruling that Plaintiff's joint venture theory does not create a triable issue is not a grant of partial summary adjudication. Plaintiff argued that there was a triable issue based on her claim that Defendants were engaged in a joint venture, so the issue was before the court. The court's finding that there is no evidence presented that creates a triable issue with regard to liability based on joint venture is not a "ruling." The court's ruling is that the motion for summary judgment is denied, based on triable issues with regard to the claim that Defendants breached the duty of care owed to decedent under applicable maritime law.

The court concludes that Defendants have not met their burden to show that maritime law does not apply in this case. Defendants also fail to establish as undisputed that they did not owe or breach a duty of care to Decedent under maritime law. Finally, Plaintiff presents affirmative evidence creating a triable issue with regard the duty of care under maritime law, and breach of the duty of care. The evidence that Petrich asked Smith to provide a ride to Decedent on the back of the jet ski that Defendant Petrich rented jointly with Smith, with knowledge that riders were not permitted on the jet skis and that Decedent and Smith were not wearing a life jacket, creates a triable issue.

Dated: 12/27/2019

_____
Judge Jeffrey Brand